UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-CV-60512-MORENO/GARBER

MARTIN BOOK,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court by Order of Reference from United States District Judge Federico A. Moreno. Pursuant to such reference, the Court has received plaintiff Martin Book's Motion for Summary Judgment (DE 22) and defendant Michael J. Astrue, Commissioner of Social Security's Motion for Summary Judgment (DE 28). The Court has also received the concomitant responses and replies. The issues before this Court are whether the record contains substantial evidence to support the ALJ's finding of nondisability, whether the proper legal standards were applied, and whether plaintiff was deprived of a full and fair hearing because the ALJ exhibited prejudice against the plaintiff. After due consideration, the undersigned respectfully recommends that the administrative law judge's decision be affirmed for the reasons set forth below.

**Background**

I.   **Brief Statement of Facts.**

Book suffers from several physical and mental impairments. His physical impairments include four herniated discs in his cervical spine that cause chronic back and neck pain, a nerve sheath tumor in his back, and hypertension, all of which the ALJ found to be severe. (R. 11, 36.) Book also suffers from major depressive disorder, anxiety, and panic attacks, all of which the ALJ found to be nonsevere. (*Id*.) At the time of his hearing, Book was 52 years old and had not engaged in substantial gainful activity since August 1, 2007, the alleged onset date of his impairment.[1]

According to Book's testimony, his back pain began in 1988 when he was injured in a motor vehicle accident. (R. 30.) Around the same time, he also started experiencing depression, anxiety, and panic attacks while working as a case manager for the state of Florida. (*Id*.) Book's physical symptoms were aggravated after another car accident in February 2008, in which he suffered a concussion. (R. 35.) He was admitted to the emergency room for knee and neck pain, but the x-ray revealed no fractures. (R. 259.) Following the 2008 car accident, Book sought treatment for his back pain from a chiropractor, who diagnosed him with various sprain injuries. (R. 284.) Book also consulted with a spinal surgeon who diagnosed him with a neural sheath tumor in his back, but concluded that surgery was not necessary for his spine problems. (R. 309.)

In addition to his physical impairments, Book suffers from anxiety, panic attacks, and depression. (R. 30.) Book has been experiencing panic attacks continuously since the early 1990s and has five to ten attacks per week. (R. 30, 38.) He was diagnosed with major depression (severe

---

[1] The record conflicts on the onset date. The disability report dated April 1, 2008, from the field office lists August 1, 2007, as the claimant's alleged onset date. (R. 186.) However, Book's testimony indicates an onset date of February of 2008. (R. 35.)

and recurrent) and anxiety disorder by a licensed clinical psychologist, for which he attended group therapy, but was not receiving medication. (R. 327, 328.)

## II.    Procedural History

Book filed applications for disability benefits and supplemental security income benefits on April 1, 2008, with an alleged onset date of August 1, 2007. (R. 9.)  After his claims were denied initially and then again upon reconsideration, Book appealed the denial to an administrative law judge who, after a hearing, issued an unfavorable decision on January 21, 2010. (R. 15.)  Book's request for review by the Appeals Council was also denied, rendering the ALJ's decision final and subject to judicial review under 42 U.S.C. § 405(g).  (R. 3.)

## III.   Regulatory Framework and Summary of the ALJ's Conclusions

Under the Social Security Act, the Social Security Administration applies a five-step sequential evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)-(g). An ALJ makes a disability determination in the following manner:

(1) First, the ALJ determines whether the claimant is currently employed or otherwise engaged in substantial gainful activity. If so, he or she is not disabled for the purposes of the Act and the inquiry ends. 20 C.F.R. § 416.920(b).

(2) If the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant suffers from a severe medically determinable impairment or combination of impairments. If the ALJ finds no impairment, or finds that the impairment is nonsevere, the inquiry ends at this step and the claimant is found not disabled. 20 C.F.R. § 416.920(c).

(3) If the ALJ finds a severe medically determinable impairment, he or she must then determine whether that impairment both meets or medically equals the criteria listed in the Listing of Impairments, and satisfies the duration requirement contained in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). These impairments are so severe that, if proven,

they support a finding of disability without further inquiry into the claimant's ability to work. *Gibson v. Heckler*, 762 F.2d 1516, 1518 n. 1 (11th Cir. 1985). If the claimant's impairment falls within this category, there is a presumption of disability and the claimant is awarded benefits.

(4) If the impairment does not fall within the Listing of Impairments, the ALJ must determine the claimant's ability to do physical and mental work activities (his or her residual functional capacity, or RFC) before moving to step four of the analysis. 20 C.F.R. § 416.920(e), 20 C.F.R. § 416.945. An individual's RFC is based on all of his or her impairments, both severe and nonsevere. 20 C.F.R. § 416.920(e). Step four requires the ALJ to determine whether these impairments prevent the claimant from performing his or her past relevant work. If the claimant shows that he or she cannot perform his or her past relevant work, the claimant establishes a *prima facie* case of disability, shifting the burden of proving nondisability to the Commissioner at step five. 20 C.F.R. § 416.920(e).

(5) Finally, if the claimant shows that he or she cannot perform past relevant work, the Commissioner must demonstrate that the claimant is capable of performing other work available in the national economy. 20 C.F.R. § 416.920(f). If, given the claimant's residual functional capacity, age, education, and work experience, the Commissioner can show that other work exists in significant numbers in the national economy, the claimant is not disabled. 20 C.F.R. § 416.920(f).

Here, the ALJ determined that: (1) Book is not engaged in substantial gainful activity; (2) Book's herniated discs and hypertension are severe impairments, but his depression, anxiety, and panic attacks are nonsevere; (3) Book's impairments do not meet the criteria of a listed impairment under 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) and Book's impairments do not prevent him from performing his past relevant work as a case manager, which the ALJ classified

as light work. (R. 11-12.) Accordingly, the ALJ found that Book was not disabled and was not eligible for benefits.

## IV.    Standard of Review

For Social Security appeals, the Court must determine whether or not the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the proper legal standard in making a disability determination. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. §405(g); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In determining whether the ALJ's findings are supported by substantial evidence, it is the Court's responsibility to scrutinize the entire record, not only the evidence that supports the ALJ's conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). However, it is not the Court's role to reweigh the evidence or to substitute its own judgment for the ALJ's judgment. *Laffoon v. Califano* 558 F.2d 253, 254 (5th Cir. 1977). Although the Court must defer to the ALJ's factual findings, it may reverse or remand the ALJ's decision if he or she failed to apply the proper legal standard or to provide an adequate basis for the decision. *Lamb*, 847 F.2d at 701.

## Discussion

Book contends that the ALJ's decision should be reversed or remanded because (1) the ALJ erred in not finding Book's mental impairments severe within the Social Security Administration's regulations; (2) the ALJ failed to weigh all of the evidence; (3) the ALJ did not apply the proper legal standard; (4) the ALJ did not require vocational expert testimony at Book's hearing; and (5) Book did not receive a full and fair hearing because the ALJ exhibited bias against him.

After thoroughly reviewing the record, the Court disagrees with Book's arguments and finds that there was substantial evidence upon which the ALJ could conclude that Book's mental impairments were nonsevere. The Court also finds that the ALJ weighed all of the relevant evidence and that even if the ALJ's failure to discuss evidence in his decision was error, it was harmless error. Finally, the Court finds that the ALJ's conduct, though not ideal, did not rise to the level of prejudice against Book.

I.  **The ALJ's Conclusion that Book's Mental Impairments are Nonsevere was Supported by Substantial Evidence**

Under the Social Security Administration regulations, a claimant bears the burden of showing that his impairments limit his or her functional abilities in (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and must also demonstrate (4) episodes of decompensation of extended duration. 20 C.F.R. §404.1520a(c)(3). To determine whether or not the claimant has satisfied this burden, the ALJ must evaluate all evidence in the record, including medical opinions from examining and non-examining sources, as well as the claimant's own testimony. 20 C.F.R §404.1527(c). If the record is inconsistent, the ALJ shall weigh all of the evidence and make a disability determination, as long as the available evidence is sufficient to do so. 20 C.F.R. §404.1527(c)(2). An ALJ may find an impairment nonsevere "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with an individual's ability to work." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

In June 2008, Book was evaluated by treating clinical psychologist, Dr. Laura A. Cohen, who produced a report on Book's mental status. (R. 325-329.) Dr. Cohen diagnosed Book with Major Depression (Severe and Recurrent) and Anxiety Disorder NOS (Not Otherwise Specified). (R. 328.) Nevertheless, the ALJ found Book's impairments to be nonsevere. (R. 12.) Book argues

that the ALJ erred in disregarding Dr. Cohen's diagnosis of "severe" depression. However, Dr. Cohen's other observations are inconsistent with Book's claim that his mental impairments are severe under the SSA regulations. Taking the entire report together with other evidence in the record, the Court finds that the ALJ's conclusion is supported by substantial evidence.

Dr. Cohen's report states that Book had previously attended a psychological support group, but that he was not receiving ongoing therapy or medication, nor was he ever admitted to an inpatient program for his depression and anxiety. (R. 327.) While the report notes Book's history of pain and panic attacks, it contains several other details that weigh against Book's claim that his impairments limit his ability to perform activities of daily living, social functioning, and mental functioning. At the time of the evaluation, Book was working as a taxi cab driver for approximately ten hours a day, five days a week. (R. 328.) Dr. Cohen observed that Book had poor concentration, but that he was alert; had a pleasant affect; had a good immediate, recent, and remote memory; had a "fair to good" general fund of knowledge; and had fair abstract reasoning. (R. 327-328.) These findings are inconsistent with an inability to function in activities of daily living, social functioning, or concentration, persistence, or pace.

The ALJ's conclusion that Book's mental impairments are not severe is also supported by Book's own testimony and the psychiatric evaluations ordered by the Social Security Administration. Book testified at his hearing before the ALJ that he was able to drive himself and did so an average of five to ten times per week. (R. 24-25.) He also stated that he visited his son every two weeks and served as a precinct captain for his local chapter of the Democratic Party. (R. 32-33.) Furthermore, two separate psychiatric evaluations by non-examining clinical psychologists found that Book's mental impairments were not severe under the SSA regulatory definition. (R. 333, 372.) Both evaluations concluded that Book has only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace; both also

noted no episodes of decompensation of extended duration. (R. 342, 382.) Another psychologist who examined Book in July 2009 diagnosed him with panic disorder on the basis of Book's statements and gave him a GAF assessment score of 69, indicating mild symptoms.[2] (R. 391.)

After fully reviewing the record and the ALJ's decision, the Court finds that the ALJ reasonably concluded at step two of the sequential evaluation process that Book's mental impairments are nonsevere. His decision was supported by substantial evidence.

## II.    The ALJ Properly Weighed All the Evidence Required by the SSA Regulations

Book contends that the ALJ failed to fully review the record by not considering two psychological examinations from Nova Southeastern University: (1) the biopsychosocial evaluation by Dr. Sehnur, a licensed clinical psychologist (R. 388-92), and (2) the Mental Capacity Assessment by Ms. Vasquez, a therapist and psychology trainee. (R. 393-97.) He claims that this omission constitutes reversible error. This argument is also unpersuasive.

When making a disability determination, an ALJ must consider opinions about a claimant's capabilities from acceptable medical sources, including both examining and non-examining licensed physicians and psychologists. *See* 20 C.F.R. §404.1513. However, an ALJ is not required to specifically refer to *every* piece of evidence in the record, as long as the ALJ's decision adequately considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (emphasis added).

Book is correct that the ALJ did not mention these two records in his decision, but the Court disagrees that this amounts to reversible error. The Court notes that Dr. Sehnur is an acceptable medical source under the SSA regulations. However, the ALJ's omission of Dr.

---

[2] The Global Assessment of Function (GAF) Scale is used by mental health professionals to assess a patient's psychological, social, and occupational functioning on a continuum. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV TR) at 32 (Text revision, 4th ed. 2000). *McCloud v. Barnhart*, 166 F. App'x 410, 420 n. 2 (11th Cir. 2006). A GAF score between 61 and 70 indicates "some mild symptoms" but "generally functioning pretty well." *Pickett v. Astrue*, 617 F. Supp. 2d 1165 n. 7 (M.D. Fla. 2008)(citing DSM-IV at 32).

Sehnur's report in his decision alone is not grounds for reversal because an ALJ need not discuss every piece of evidence in the record, as long as his or her decision is supported by substantial evidence. Furthermore, even if the ALJ was required to consider Dr. Sehnhur's report (or state explicitly why he did not consider it), it does not actually bolster Book's claim that he suffers from severe mental impairments. Dr. Sehnur's evaluation states that Book's panic disorder was mild. **(**R. 391.) At most, the ALJ's omission of this report constitutes harmless error.

Book also points out that the ALJ did not discuss the Mental Capacity Assessment performed by Ms. Vasquez, who found several "marked" limitations in areas of mental and social functioning. (R. 395.) While this assessment lends stronger support to Book's disability claim, the Court disagrees that omitting it from the decision constitutes reversible error because the ALJ was not *required* to consider this evidence. Under the SSA's regulations, an ALJ must consider the opinions of licensed or certified psychologists and *may* consider other sources at his or her discretion. 20 C.F.R. §404.1513(a)(2), 20 C.F.R. §404.1513(d)(1) (emphasis added). At the time she performed her assessment on Book, Ms. Vasquez was a therapist and psychological trainee, not an acceptable medical source under the SSA regulations. (R. 397.) Therefore, the ALJ was within his discretion to consider Ms. Vasquez's report and did not err in failing to do so.

### III.   The ALJ Applied the Proper Legal Standard in Evaluating Book's Residual Functional Capacity to Perform Past Relevant Work

Next, Book argues that the ALJ did not apply the proper legal standard in concluding that, despite Book's impairments, he retains the residual functional capacity (RFC) to perform a full range of light work, including his past work as a case manager. He claims that the ALJ failed to properly analyze the mental and exertional demands of this work.[3] The Court disagrees and finds

---

[3] Book argues in his Motion for Summary Judgment that the ALJ's determination of Book's RFC is not supported by substantial evidence. (Pl.'s Mot. Summ. J. at 21.) However, this argument conflates the substantial *factual* evidence requirement for supporting an ALJ's decision and the proper *legal* standards that govern an ALJ's evaluation of a claimant's RFC for making a disability determination.

that the ALJ applied the proper legal standard in finding that Book retains the RFC to perform his past relevant work.

Once an ALJ has found that a claimant's impairment is severe at step three of the sequential evaluation process, step four requires the ALJ to decide whether a claimant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R § 1520(a)(4)(iv). When evaluating a claimant's RFC, the ALJ must consider all of the individual's impairments, both severe and nonsevere. 20 C.F.R. § 416.920(e). At this step of the sequential evaluation process, an ALJ may rely on vocational expertise or *other* resources, such as the *Dictionary of Occupational Titles*, to determine the exertional demands of claimant's past relevant work and whether the claimant's impairments preclude him or her from meeting those demands. 20 C.F.R. § 404.1560(b)(2) (emphasis added).

In evaluating a claimant's ability to do past relevant work, the ALJ engages in a two-step process. First, the ALJ must find whether the claimant has an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the pain or other symptoms. 20 C.F.R. § 404.1529(b). A claimant's statements alone do not establish the presence of a medically determinable impairment; the impairment must be validated by other evidence, such as medical or laboratory findings. *Id*. However, if a claimant testifies to having disabling symptoms, an ALJ is required to explicitly articulate adequate reasons for discrediting that testimony. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Second, if the ALJ finds a medically determinable impairment at the first step, he must then evaluate the intensity, persistence, and limiting effects of the symptoms and the extent to which they preclude the claimant from engaging in basic work activities. 20 C.F.R. § 404.1529(c)(1). Basic work activities include physical actions (e.g. sitting, standing, walking,

carrying, and pushing) and mental abilities (e.g. understanding, remembering, carrying out instructions, and responding appropriately to supervision). 20 C.F.R. § 416.1545(b)-(c).

Here, the ALJ determined that Book's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, he concluded that Book's statements about the intensity, persistence, and limiting effects of those symptoms lacked credibility in light of other evidence on the record. The ALJ considered several factual findings in discrediting Book's testimony and finding Book capable of meeting the demands of light work: (1) Book's ability to drive five to ten times a week, visit regularly with his son, and act as a precinct captain; (2) that Book had sought work and pursued unemployment benefits through the date of his hearing; (3) that Book was working for 30 hours per week subsequent to his disability's alleged onset date; and (4) medical findings from Book's treating physicians, including normal joint mobility, gait, and neurological function (R. 13.) The Court finds that the ALJ clearly articulated these reasons for discrediting Book's testimony in his decision as required by the SSA regulations.

The Court also finds that the ALJ was within his discretion to rely on the *Dictionary of Occupational Titles* to assist him in determining whether Book's RFC precludes him from his past relevant work as a case manager. The DOT classifies a case manager as light, semi-skilled work.[4] Taking this definition together with the objective medical evidence, the ALJ concluded that Book is capable of the physical and mental demands of his past relevant work. The Court finds that the ALJ applied the proper legal standard in making this residual functional capacity determination.

---

[4] According to *The Dictionary of Occupational Titles*, a case worker in child welfare is classified as "Light Work," which requires "Exerting up to 20 pounds of force occasionally... and/or up to 10 pounds of force frequently." It requires physical abilities of reaching, handling, fingering, talking, and hearing. It also requires an ability to interpret technical instructions and deal with several abstract and concrete variables. *Dictionary of Occupational Titles*, 195.107-014 (4th ed., 1991).

### IV. Vocational Expert Testimony was Not Required at the Hearing Because the ALJ Properly Concluded that Book was Capable of Past Relevant Work

Book also claims that the ALJ erred in not requiring vocational expert testimony at the hearing because the ALJ failed to consider Book's nonexertional mental impairments. He argues that because the ALJ should have found his mental impairments to be severe, a vocational expert was required at the hearing to determine the effects of those impairments on his ability to work full-time. Book points out in his Motion for Summary Judgment that "the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, *preferably* through a vocational expert's testimony." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (emphasis added). The Court rejects this argument for several reasons.

First, the Court has already disposed of Book's claim that the ALJ erred in finding his mental impairments nonsevere and need not address that argument further. Next, Book's contention that the ALJ must support his conclusion about a claimant's RFC at step four of the sequential evaluation process with independent evidence from a vocational expert is without merit. Book cites *Wilson v. Barnhart* for that proposition; however, that case is distinguishable. In *Wilson*, the ALJ found that the claimant was *not* capable of performing past relevant work and had proceeded to determining the claimant's RFC at step five of the sequential evaluation process.

Here, the ALJ properly concluded that Book's RFC did not preclude him from his past relevant work as a case manager. Vocational expert testimony is not required where a claimant is capable of returning to past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990). At step four of the sequential evaluation process, the ALJ has discretion over which resources (including vocational expert testimony) to consult when determining whether a

claimant is capable of returning to past relevant work. 20 C.F.R. § 404.1560(b)(2). Accordingly, a vocational expert was not required at Book's hearing.

## V.     The ALJ Conducted a Full and Fair Hearing and Was Not Required to Recuse Himself from the Proceedings

Finally, Book argues that the ALJ gave an appearance of bias at the hearing for which he should have recused himself upon timely request. Book bases this claim on an exchange that occurred at the first hearing on August 18, 2009, between the ALJ, Book, and Book's former attorney's partner, at which Book testified that his prior attorney told him the ALJ was a "horrible judge." (R. 60.) The ALJ expressed that he was "shocked" at the comments, revealing that he had spoken with the office of Book's former attorney over the phone about them. (R. 61.) At the hearing, the ALJ also called in one of the attorneys from the firm that formerly represented Book and personally confronted him about the comments.[5] (R. 63.) The ALJ refused Book's recusal request and conducted the hearing. (R. 64.) As the issue of the ALJ's alleged prejudice was not brought up in the appeal of the administrative decision (R. 113), it is raised for the first time before this Court. [6]

Under the Commissioner's regulations, an ALJ may not conduct a hearing "if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. If the ALJ fails to withdraw from a case where he or she lacks

---

[5]The transcript of the hearing shows that when Book expressed concerns that the ALJ would not be fair toward him, the ALJ retorted:

> After 30 years as a judge, I think I can be fair and impartial. But I think, though, that you ought to be careful before you say—told you that I was horrible judge. I have [INAUDIBLE] to mention this case to Lieberman's office, because I said, "How come you're not on it?" And that the comments that you've made about being a horrible judge, he's shocked. (R. 61.)

While concluding that the ALJ ultimately conducted a full and fair hearing of Book's claims, the Court wishes to emphasize that the ALJ did exhibit less than ideal judicial decorum during this exchange.

[6] A disability claimant is not required to exhaust all issues in an administrative appeal. *Sims v. Apfel*, 530 U.S. 103, 107 (2000). However, the fact that this issue is being raised for the first time before this Court sheds doubt on the claim's timeliness.

impartiality, the claimant may present objections to the Appeals Council. *Id*. However, hearing officers acting in a quasi-judicial capacity are afforded a presumption of impartiality unless the claimant can establish the existence of a conflict of interest or some other disqualification. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).

The Eleventh Circuit has found that an ALJ was not disqualified where no bias was evident in the record, where the ALJ gave the claimant every opportunity to present his case, and where the ALJ explained the rules governing Social Security determinations. *Otto v. Comm'r of Soc. Sec.*, 171 F. App'x 782, 785 (11th Cir. 2006). Words of admonition by an ALJ against a claimant do not, in themselves, indicate bias where the ALJ conducts an otherwise full and fair hearing. *Griffin v. Weinberger*, 492 F.2d 969 (5th Cir. 1974). The Court finds this reasoning applicable here and concludes that Book has not satisfied the burden of showing the ALJ exhibited bias against him.

Aside from the confrontation at the first hearing on August 18, 2009, Book points to no specific instance of the ALJ's bias at the second hearing on November 10, 2009. In fact, at the first hearing, the ALJ granted Book leave to obtain representation before continuing the proceeding. (R. 64.) During the second hearing, the ALJ allowed Book to fully testify. The ALJ did not refer to the incident from the first hearing, did not act overly aggressive toward Book or his attorney, nor did he mock Book's credibility regarding the evidence presented. Because the ALJ's actions at the first hearing did not amount to prejudice against Book at the second hearing, the Court concludes that the ALJ gave Book a full and fair hearing.

## Conclusion and Recommendation

The Court finds that the ALJ's conclusion that Book's mental impairments are not severe was based on substantial evidence in the record and that the ALJ applied the proper legal standard in making his disability determination. Further, the record shows that the ALJ gave no appearance

of prejudice against Book and conducted a full and fair hearing. For these reasons, and as set forth more fully above, the undersigned respectfully

RECOMMENDS that the decision of the Commissioner be AFFIRMED.

Accordingly, it is also the recommendation of the undersigned that the plaintiff Martin Book's Motion for Summary Judgment (DE 22) be DENIED and that the Commissioner's Motion for Summary Judgment (DE 28) be GRANTED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have fourteen days from the date of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  *See also* 28 U.S.C. § 636. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 3rd day of July 2012.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE